# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:17-cv-00347-RJC
# (3:15-cr-00286-RJC-DSC-1)

| | |
|---|---|
| FRANK ENRIQUE LLERAS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [Doc. 1].

**I.     BACKGROUND**

In 2009, Petitioner Frank Enrique Lleras ("Petitioner") established Optimum Income Property Investments, LLC, ("Optimum") as a real estate investment company. [Criminal Case. No. 3:15-cr-286-RJC ("CR"), Doc. 15, ¶¶ 1, 3 (Factual Basis)]. Petitioner was the managing partner and promoted the company as buying distressed or foreclosed real estate in Mecklenburg County and elsewhere, then reselling or leasing the properties. [Id. at ¶ 3]. Petitioner, whose father-in-law was a doctor in the Dominican Republic, induced more than 20 people from the Dominican Republic medical community to invest about $3 million in his scheme. [Id. at ¶ 4]. Petitioner told investors that their funds would be used to purchase real estate. The funds, however, were not invested as promised. [Id. at ¶ 6]. Petitioner diverted investor money to other Optimum debts, to purchase property titled to Optimum (rather than to individual investors), to other business ventures, and to support Petitioner's personal lifestyle. [Id.] Petitioner attempted to

conceal his fraud by providing investors with fabricated deeds, sham real estate tax bill receipts, and bogus monthly portfolio statements that showed interest gains on their investments. [Id.]

In November 2014, Petitioner's scheme was revealed when several investors traveled to Charlotte, North Carolina, to check on their bank accounts and real estate. They were informed by the bank that, contrary to the statements provided by Petitioner, their bank accounts had little to no funds. [CR Doc. 1 at 5]. Similarly, Mecklenburg County informed the investors that many of the property deeds and tax bills provided to them by Petitioner were fraudulent. [Id.]. After several investors confronted Petitioner about the theft of their investment money, Petitioner admitted wrongdoing and that he owed them money. [Id. at 5, 8; Doc. 1 at 2-3].

Petitioner was indicted by a grand jury and charged with aiding and abetting securities fraud in violation of 15 U.S.C. § 78j(b), 78ff; 17 C.F.R. 240.10b-5; and 18 U.S.C. § 2 (Count One); and aiding and abetting wire fraud in violation of 18 U.S.C. § 1343 (Count Two). [CR Doc. 11]. Petitioner retained Samuel J. Randall, IV, to represent him and Randall appeared on his behalf. [CR Doc. 5; Doc. 3-1 at ¶ 5]. After Petitioner and Randall reviewed the facts of the case and discussed the discovery, as well as the possible sentences that Petitioner might receive if Petitioner proceeded to trial or if he pleaded guilty, Petitioner agreed to plead guilty to both charges. [CR Doc. 14 at ¶ 1; Doc. 3-1 at ¶¶ 9-10, 16].

In agreeing to the plea, Petitioner acknowledged that he was aware of the 20-years maximum sentence on each count, that the Court could impose any sentence up to this maximum, that the Court had not yet determined the sentence to be imposed, and that any estimate of the sentence was a prediction, rather than a promise. [CR Doc. 14 (Plea Agreement) at ¶ 5]. The parties jointly recommended that the Court find that the amount of loss reasonably foreseeable to Petitioner was over $2.9 million and that the applicable adjusted offense level was 27 (which

included a base offense level of 7, a 16-level enhancement for the amount of loss, a two-level enhancement for use of sophisticated means). [Id. at ¶ 6]. The Government agreed that Petitioner's plea was timely for purposes of receiving a downward adjustment for acceptance of responsibility. [Id.]. The parties also agreed not to recommend any other enhancement or reductions, that a sentence within the applicable guideline range was appropriate, and that they would not seek a departure or variance. [Id.]. Petitioner agreed to pay full restitution to all victims directly or indirectly harmed by his relevant conduct. [Id. at ¶ 7]. As part of the plea agreement, Petitioner admitted that he had read and understood the factual basis and that the factual basis could be used to determine the advisory guideline range and sentence. [Id. at ¶ 14]. Finally, Petitioner agreed to waive the right to contest his conviction and sentence on direct appeal or in any post-conviction proceeding, except as to claims of ineffective assistance or prosecutorial misconduct. [Id. at ¶¶ 18-19].

At the plea hearing, the Government summarized the charges against Petitioner, including the fact that each count carried a maximum penalty of 20 years of imprisonment. [CR Doc. 35 at 3-4 (Plea Transcript)]. Petitioner agree that he fully understood the charges, including the maximum penalties, that he had discussed the Sentencing Guidelines with his attorney and understood that his guideline range could not be determined until after his presentence report had been prepared, that he understood that he could be sentenced higher or lower than the guideline range, and that he would still be bound by his guilty plea even if he received a higher sentence that he expected. [Id. at 4-6]. Petitioner affirmed that he was guilty of both counts of the indictment. [Id. at 7]. The Government also summarized the Plea Agreement, including the agreement that the loss amount exceeded $2.9 million, that an adjusted offense level of 27 applied, that the plea was timely made for purposes of acceptance of responsibility, that the parties would not

recommend any other enhancements or reductions, that neither party would seek a departure or variance from the guideline range, and that Petitioner was waiving his right to appeal his conviction on any grounds except ineffective assistance or prosecutorial misconduct. [Id. at 8]. Petitioner stated that he understood and agreed to these terms. [Id. at 9]. The Court also confirmed that Petitioner understood that he was waiving his right to appeal and to pursue post-conviction relief. [Id. at 9]. Petitioner testified that he had read, understood, and agreed with the factual basis. [Id. at 9-10]. Petitioner also stated that no one had threatened, intimidated, or forced him to plead guilty, and, other than the terms of his plea agreement, no one had made him any promises of leniency or a light sentence to induce him to plead guilty. [Id. at 10]. Petitioner affirmed that he had had sufficient time to discuss any possible defenses with his attorney and that he was satisfied with his attorney's services. [Id.]. Thereafter, the magistrate judge accepted Petitioner's guilty plea, finding that it was knowingly and voluntarily made. [Id. at 11].

A probation officer prepared a presentence report, recommending, as in the plea agreement, that Petitioner be sentenced at a base offense level of 7, that he receive a 16-level enhancement based on a loss amount between $1.5 million and $3.5 million, that he receive a two-level enhancement for use of sophisticated means, and that he receive a two-level enhancement because the offense involved more than ten victims. [CR Doc. 21 (Presentence Report (PSR)) at ¶¶ 24-27. Allowing a three-level reduction for acceptance of responsibility, Petitioner's total offense level as 24. [Id. at ¶¶ 33-35]. While Petitioner had a considerable number of moving violations in his past, the probation officer determined that his criminal history category was I. [Id. at ¶¶ 38-51]. Petitioner's advisory guideline range was 51 to 63 months of imprisonment. [Id. at ¶ 75]. The probation officer also noted that Petitioner had suffered from a substance abuse problem and that

Petitioner had indicated that he would benefit from substance abuse treatment while incarcerated. [Id. at ¶ 64].

At the sentencing hearing, the Court adopted the magistrate judge's findings that Petitioner's guilty plea was knowingly and voluntarily made, noting that there had been no objections to this finding. [CR Doc. 34 at 2-3]. Petitioner stated that he had read and discussed the PSR with his attorney and that he understood it. [Id. at 3]. Defense counsel requested a sentence for Petitioner at the bottom of the guideline range. [Id. at 9]. Defense counsel argued that, while Petitioner had been initially successful in buying, rehabilitating, and selling properties, he eventually started losing money and did not want to admit his failure. [Id. at 7]. To cover up his failures, he continued making deals, perpetuating them with false documents. [Id.]. Counsel argued that Petitioner attempted to make restitution to some investors before he was charged, and that Petitioner had been working while on release to continue making restitution. [Id. at 7-8]. Counsel argued that Petitioner had learned from his mistakes and was now "a much different person." [Id. at 8-9]. Counsel also requested that the Court recommend drug or alcohol treatment for Petitioner, as well as education or vocational programs. [Id. at 8]. Counsel also noted that he had submitted letters to the Court regarding Petitioner's character. [Id. at 9]. Petitioner allocated, stating that he was truly sorry and that he never intended to take anyone's money. [Id. at 10]. Petitioner requested to self-report and stated that he wanted to be able to return to society and make restitution. [Id. at 7]. The Government requested a sentence within the guideline range and presented testimony from two victims who testified to the hardship suffered as a result of Petitioner's fraud. [Id. at 12-15].

This Court imposed a 60-month sentence, noting that Petitioner's prior convictions, while not serious, reflected a lack of respect for the law. [Id. at 15-16]. The Court also cited the serious

nature of the Ponzi scheme, the impact on the community, Petitioner's numerous "reprehensible" efforts to deceive, the length of his activity, and the need for deterrence. [Id. at 15-17]. The Court noted Petitioner's substance abuse problems and recommended that he be allowed to participate in any available treatment programs while incarcerated. [Id. at 17]. The Court advised Petitioner of his right to appeal, the deadline for doing so, that he could appeal at no costs. The Court allowed Petitioner to self-report. [Id. at 21, 23].

Petitioner did not appeal nor request counsel to do so. [See Doc. 1 at 13; Doc. 3-1 at ¶ 20]. Petitioner timely filed the present motion to vacate in June 2017, in which he argues that his counsel was ineffective for three reasons: (1) for failing to properly inform Petitioner of the consequences of the guilty plea, (2) for failing to object to the use of relevant conduct at sentencing, and (3) for failing to adequately consult with Petitioner about Petitioner's right to appeal or filing a notice of appeal. [Doc. 1]. The Government filed its response on June 22, 2018. [Doc. 3].

## II.  STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.  DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient

performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should

7

dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Ci1r. 1999) (quoting Strickland, 466 U.S. at 694)). If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Finally, where an ineffective assistance claim relates to Petitioner's right of appeal, counsel has a duty to consult with a defendant about an appeal where "a rational defendant would want to appeal" or where the "defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 479-80 (2000). In determining whether counsel had a duty to consult, the Court considers whether the conviction followed a guilty plea, which

limits the appealable issues and can show a defendant's desire to end judicial proceedings; whether the defendant as sentenced in accordance with his plea; and whether are grounds to appeal were reserved. Id. at 480. Further, the failure to file a notice of appeal after an unequivocal request to do so constitutes deficient performance. United States v. Poindexter, 492 F.3d 263, 269 (4th Cir. 2007).

      A.      **Plea Agreement.**

Petitioner argues that he did not understand the consequences of his guilty plea because counsel did not adequately explain them to Petitioner. This argument is without merit. Here, Petitioner contends that he wanted to renegotiate the terms of his plea agreement, referencing allegedly false statements in the factual basis regarding real estate and jewelry, but that his attorney told him to accept the plea agreement or face a 20-year sentence. [Doc. 1 at 4-5]. Petitioner argues that he vacillated on whether to go to trial or plea and that his attorney misled and induced him to plead guilty by stating that Petitioner would receive a 27-month sentence if he pleaded guilty. [Id. at 5-8]. Petitioner contends that he was never advised of the potential risk and sentencing possibilities inherent in accepting the plea offer. [Id. at 8]. Petitioner also argues that his attorney did not know how to calculate good time credit. [Id.]. Petitioner states he would have proceeded to trial had he known that his attorney's approach "had a strong possibility of failing" and that his attorney did not intend to file a presentencing memorandum on Petitioner's behalf. [Id. at 9].

Petitioner's testimony at the plea hearing contradicts any argument that he did not understand the consequences of a guilty plea. At the plea hearing, Petitioner affirmed that he understood that he could sentenced up to 20 years as to each count, that the guideline range could not be determined until later, and that he could receive a sentence higher or lower than that range. [CR Doc. 35 at 4-6]. Petitioner also affirmed that he understood and agreed to the terms of his

9

plea agreement, including the waiver of his appellate rights, and that no outside promises of leniency or a light sentence had been made to induce him to plead guilty. [Id. at 8-10]. Finally, Petitioner testified that no one had threatened, intimidated, or forced him to plead guilty. [Id. at 10]. Petitioner's own sworn testimony contradicts his assertion that he pleaded guilty because he was promised a 27-month sentence. See Lamaster, 403 F.3d at 221-22. Accordingly, Petitioner has failed to show deficient performance by his attorney on this issue.

Further, even if the Court were to ignore Petitioner's sworn testimony, the record does not show deficient performance. Counsel reviewed all the provisions of the plea agreement with Petitioner and discussed with Petitioner the possible sentences he could receive. Doc. 3-1 at ¶¶ 11-16. This discussion included the amount of time Petitioner might serve in prison considering good time and other credit. [Id. at ¶ 14]. Further, given the plea agreement was modified three times, the record shows that counsel activity negotiated on Petitioner's behalf. [Doc. 1 at 4]. Also, Petitioner has not shown that the Government would have agreed to different terms nor that the Court would have accepted them.

Finally, Petitioner has not shown there was an objectively reasonable probability for him to have proceeded to trial but for hi counsel's alleged errors. Rather, the parties' agreement to the offense level and to not move for any other adjustments, departures, or variances speaks against the possibility. [See CR Doc. 14 at ¶ 6].

In sum, Petitioner gas failed to show deficient performance and prejudice as to his first claim. It will, therefore, be dismissed.

### B. Sentencing.

To establish ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence. See Royal v. Trombone, 188 F.3d 239, 249 (4th Cir. 1999).

Petitioner argues that his attorney's performance was deficient at Petitioner's sentencing. Petitioner contends that his attorney should have filed a sentencing memorandum and should have offered evidence of Petitioner's original intent in forming the business and efforts toward restitution. [Doc. 1 at 6, 9]. Petitioner also argues that his attorney should have highlighted for the Court Petitioner's cooperation with the SEC in its investigation of Taly Brinzey, an individual to whom Petitioner sold property for her clients. [Id. at 9]. Petitioner further argues that his attorney should have contested statements in the factual basis that Petitioner says are false regarding Petitioner's use of the stolen money and should have objected to testimony regarding Petitioner's relevant conduct. [Id. at 9-11]. Finally, Petitioner states that his attorney did not properly prepare him for his presentencing interview and that, if his attorney had submitted a sentencing memorandum, "there is a strong likelihood that [he] would have received consideration from the Court." [Id. at 8].

Petitioner's argument similarly fails on this issue. He has not shown deficient performance by his attorney at sentencing. The record shows that Petitioner's attorney argued at sentencing that Petitioner was initially successful after starting his business, that Petitioner had begun making restitution while on release, and that Petitioner wanted to pay his victims back. [Doc. 34 at 7-9]. Counsel asked the Court to recommend drug or alcohol treatment, which was recognized by the Court. [Id. at 8]. Further, Petitioner has now shown that it was objectively unreasonable for counsel not to file a sentencing memorandum, particularly where the PSR recommended the

offense level agreed to by the parties in the plea agreement and the parties had agreed not to recommend other variances or adjustments to the sentence. Petitioner has likewise not shown that his attorney's decisions related to the other putative performance deficiencies were objectively unreasonable.

Petitioner has also failed to demonstrate prejudice. Both he and his attorney emphasized that Petitioner did not begin his business intending to defraud people, that he wanted to make restitution to his victims, and that he needed treatment for substance abuse. As such, Petitioner has not shown a reasonable probability that he would have received a lower sentence had counsel also raised the other issues Petitioner cites. In fact, counsel would have risked breaching the plea agreement or losing Petitioner's credit for acceptance of responsibility had counsel raised those issues.

In sum, this claim should be denied for Petitioner's failure to show that his counsel's performance was deficient or that Petitioner was prejudiced by counsel's conduct at sentencing. See Strickland, 466 U.S. at 687-88; Royal, 188 F.3d at 249.

### C. Appellate Rights.

To establish ineffective assistance of counsel as to an attorney's consultation regarding an appeal, Petitioner must show that a rational defendant would have wanted to appeal or that Petitioner had reasonably demonstrated to counsel that Petitioner was interested in appealing. Roe, 528 U.S. at 479-80. Petitioner has also failed to meet this burden.

Petitioner argues that his attorney was ineffective because his attorney should have consulted with Petitioner about appealing after Petitioner's sentence was imposed. [Doc. 1 at 12]. Contrary to Petitioner's plea hearing testimony, Petitioner says that he never clearly understood his appeal rights under the plea agreement. [Id.]. He argues that he had nonfrivolous grounds for

appeal in that he did not have a chance "to tell [his] story" and his attorney "chose not to challenge key testimony and assertions of the prosecution." [Id. at 12-13]. Petitioner states that if he "would have appealed 'but for counsel's deficient conduct' in failing to consult with [him] about an appeal." [Id. at 13].

The record shows, however, that Petitioner pleaded guilty and waived his right to appeal, except for claims of ineffective assistance or prosecutorial misconduct. [CR Doc. 14 at ¶¶ 18-19. As part of his guilty plea, Petitioner agreed to a specific offense level and agreed not to seek any other adjustments to his sentence. [Id. at ¶ 6]. Petitioner was sentenced in accordance with his plea agreement and within the advisory guideline range. No rational defendant would have wanted to appeal under these circumstances. Further, Petitioner has not shown that his counsel had any indication that Petitioner wanted to appeal. [See Doc. 1 at 12-13; Doc. 31 at ¶ 20]. Counsel's conduct, therefore, was "within the wide range of reasonable professional assistance" and was objectively reasonable. See Roe, 528 U.S. at 480; Strickland, 466 U.S. at 687-89. Furthermore, Petitioner has not demonstrated he had any available, nonfrivolous grounds for appeal.

Finally, as to Petitioner's contention that he did not understand his appeal rights, Petitioner's argument contradicts the record. Petitioner affirmed under oath to this Court that he understood the provisions in his plea agreement, including the waiver of his appellate rights. [CR Doc. 14 at 8-9]. This Court advised Petitioner of his right to appeal, including the applicable time limit, that he could appeal at no cost, and at the conclusion of his sentencing hearing. [CR Doc. 34 at 21]. Other than a bare assertion to the contrary, Petitioner has failed to demonstrate that, but for counsel's alleged deficient performance, he would have filed an appeal. [See Doc. 1 at 13].

Petitioner, therefore, has not shown deficient performance or prejudice on this issue. This claim, therefore, should be denied for Petitioner's failure to show that his counsel's performance

was deficient or that Petitioner was prejudiced by counsel's conduct relative to consultation about an appeal. See Roe, 528 U.S. at 479-80, 484.

In sum, because Petitioner cannot show deficient performance or prejudice, his ineffective assistance claims will be dismissed.

**IV.   CONCLUSION**

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: June 30, 2019

Robert J. Conrad, Jr.
United States District Judge